*ecc # 12222*

AO 241
(Rev. 06/13)

**PETITION UNDER 28 U.S.C. § 2254
HABEAS CORPUS BY A PERSON IN**

Case:2:19-cv-11272
Judge: Drain, Gershwin A.
MJ: Stafford, Elizabeth A.
Filed: 04-30-2019 At 09:21 AM
HC ONUMONU VS DAVIS (RB)

| United States District Court | Distric |
| --- | --- |

| Name (under which you were convicted): | Docket or Case No.: |
| **Nosakhare N. Onumonu** | **2:19-cv-10438 -BAF-SDD** |

| Place of Confinement : **Ionia Correctional Facility 1576 w. Bluewater Hwy, Ionia, MI. 48846** | Prisoner No.: **303121** |

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
| **Nosakhare N. Onumonu** v. | **John Davis** |

| The Attorney General of the State of: **Dana Nessel** |

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   **Circuit Court Wanye County Frank Murphy Hall of Justice**

   **1441 st. Antoine  Detroit, Mi. 48226**

   (b) Criminal docket or case number (if you know): **12-000-687-01-fh**

2. (a) Date of the judgment of conviction (if you know):  **July 27th, 2015**

   (b) Date of sentencing: **August 21st, 2015**

3. Length of sentence:  **Life without Parole**

4. In this case, were you convicted on more than one count or of more than one crime?  (**X**) Yes  ( ) No

5. Identify all crimes of which you were convicted and sentenced in this case:

   **count 1- Felony Murder and count 2- First Degree Murder**

6. (a) What was your plea? (Check one)

   (1) **x** Not guilty     (3) ___ Nolo contendere (no contest)

   (2) ___ Guilty           (4) ___ Insanity plea

1

AO 241
(Rev. 06/13)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

    (X) Jury    ( ) Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ( ) Yes    (X) No

8. Did you appeal from the judgment of conviction?

    (X) Yes    ( ) No

9. If you did appeal, answer the following:

(a) Name of court: **Trial Court / Court of Appeals**

(b) Docket or case number (if you know): **12-000687-01-fh / 329100**

(c) Result: **Denied in part, Granted in part / Appeal Denied**

(d) Date of result (if you know): **July 28th, 2016 / July 13th, 2017**

(e) Citation to the case (if you know): _____

(f) Grounds raised: **a. Sufficiency of evidence. b.Ineffective Assistance of Counsel. c. Invalid Sentence. d. Double Jeopardy./ 1-Speedy Trial. 2-Circuit Court Abused of Discrection. 3-Jurisdictional Default. 4-Suppression of Evidence. 5-Sufficiency of evidence. 6-Identification. 7-Ginther hearing. 8-Great Weight of evidence.**

(g) Did you seek further review by a higher state court?    (x) Yes  ( ) No

    If yes, answer the following:

    (1) Name of court: **Michigan Supreme Court**

    (2) Docket or case number (if you know): **156834**

    (3) Result: **Denied**

    (4) Date of result (if you know): **February 4th, 2019**

AO 241
(Rev. 06/13)

(5) Citation to the case (if you know):

(6) Grounds raised:        1-speedy trial. 2-abuse of discrection. 3-jurisdictional default. 4-identification. 5-sufficiency of evidence. 6-Ginther hearing. 7-new trial. 8-evidentiary hearing. 9-court of appeals err of concession.

(h) Did you file a petition for certiorari in the United States Supreme Court?        ( ) Yes  (x) No If yes,

answer the following:

(1) Docket or case number (if you know):

(2) Result:


(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?        ( ) Yes        (x) No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:


(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

( ) Yes  ( ) No

(7) Result:

(8) Date of result (if you know):

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

        _____

        _____

        _____

        _____

        _____

        _____

        _____

        _____

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☐ Yes    ☐ No

    (7) Result: _____

    (8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

        _____

        _____

        _____

        _____

        _____

        _____

        _____

        _____

AO 241
(Rev. 06/13)

(b) If you filed any second petition, application, or motion, give the same information:

> (1) Name of court:

> (2) Docket or case number (if you know):

> (3) Date of filing (if you know):

> (4) Nature of the proceeding:

> (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application. or motion?

> ( )  Yes  ( )  No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

> (1) Name of court:

> (2) Docket or case number (if you know):

> (3) Date of filing (if you know):

> (4) Nature of the proceeding:

> (5) Grounds raised:

AO 241
(Rev. 06/13)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

( )  Yes  ( )  No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:       ( ) Yes       ( ) No

(2)  Second petition:   ( ) Yes       ( ) No

(3)  Third petition:      ( ) Yes       ( ) No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**     speedy  trial  (please  see  attached  pages  1-3)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:

_____

_____

_____

_____

AO 241
(Rev. 06/13)

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        (**x**) Yes        ( ) No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

( ) Yes   (**x**) No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(3) Did you receive a hearing on your motion or petition?        ( ) Yes        ( ) No

(4) Did you appeal from the denial of your motion or petition?        ( ) Yes        ( ) No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ( ) Yes   ( ) No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

AO 241
(Rev. 06/13)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

_____

**GROUND TWO:**       Abuse of Discretion - Jurisdictional Default
                      (please see attached pages 3-5)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why:

_____

_____

_____

(c)     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?      (x) Yes      ( ) No

        (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

_____

_____

(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

                ( ) Yes  (x) No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed:

_____

_____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

**8**

Result (attach a copy of the court's opinion or order, if available):

_____

_____

_____

(3) Did you receive a hearing on your motion or petition?               ( )  Yes        ( )  No

(4) Did you appeal from the denial of your motion or petition?          ( )  Yes        ( )  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ( )  Yes        ( )  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two :

_____

_____

_____

**GROUND THREE:**        `Jurisdictional Default- Invalid Sentence`

`(please see attached page 5)`

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

AO 241
(Rev. 06/13)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

_____

_____

_____

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ( **x** )  Yes   ( )  No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

( **x** )  Yes  ( )  No

(2) If your answer to Question (d)(1) is "Yes," state:   **post conviction new trial motion**

Type of motion or petition:   **motion to correct invalid sentence**

Name and location of the court where the motion or petition was filed:   **trial court**
**Wayne County Circuit Court**

Docket or case number (if you know):   **12-000687-01-FH**

Date of the court's decision:   **July 28th, 2016**

Result (attach a copy of the court's opinion or order, if available):   **Granted/Denied**

_____

(3) Did you receive a hearing on your motion or petition?   ( **x** )  Yes   ( )  No

(4) Did you appeal from the denial of your motion or petition?   ( **x** )  Yes   ( )  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ( **x** )  Yes   ( )  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
**Michigan Court of Appeals/Michigan Supreme Court**

Docket or case number (if you know):   **329100/156834**

Date of the court's decision:   **July 13th, 2017/February 4th, 2019**

Result (attach a copy of the court's opinion or order, if available):   **Denied/Denied**

AO 241
(Rev. 06/13)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

_____

_____

**GROUND FOUR:**    `Identification- (please see attached pages 6-7)`

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why:

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        (x)  Yes        ( )  No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

( )  Yes   (x )  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241
(Rev. 06/13)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?          ( ) Yes        ( ) No

(4) Did you appeal from the denial of your motion or petition?     ( ) Yes        ( ) No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ( ) Yes        ( ) No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

Grounds 5-8 see attached pages 7-9

AO 241
(Rev. 06/13)

Page 13

13.     Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    (x) Yes    ( ) No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ( ) Yes    (x) No

        If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ( ) Yes    (x) No

        If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 241
(Rev. 06/13)

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:   **1st and 2nd exam- Wyatt Harris**

   **3rd exam- Mark Brown**

(b) At arraignment and plea:   **Wyatt harris- Mark Brown**

(c) At trial:   **Mark Procida**

(d) At sentencing:   **Mark Procida**

(e) On appeal:   **Erin Johnson-Bevel**

(f) In any post-conviction proceeding:   **Erin Johnson-Bevel**

(g) On appeal from any ruling against you in a post-conviction proceeding:   **Erin Johnson-Bevel**

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?   ( ) Yes   (x) No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?   ( ) Yes   ( ) No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 06/13)

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 06/13)



(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: Vacate Sentence and Overturn Conviction. Order Ginther Hearing for claim of Ineffective Counsel, New Trial, or whatever this Court finds what Just relief is due.

or any other relief to which petitioner may be entitled.

**DECLARATION OF SERVICE**

The petitioner certify under 28 USC 1746 that a copy of this document was served to all parties by U.S. Mail.

**SUBMITTED BY:** MR. [signature]

**DATED:** APRIL 23RD, 2019

## GROUNDS FOR PETITION 1-8

**GROUND ONE:** Mr. Onumonu was denied due process of law under the sixth, fifth, and fourteenth Amendment to the United States Constitution, where the Trial Court violated his right to a speedy trial and unlawfully retained him, and the appellate court shifted the burden of proof claiming due to Mr. Onumonu failing to assert his right to a speedy trial after 1,343 days elapsed.

## SUPPORTING FACTS:

On September 22nd, 2011, Mr. Onumonu was granted parole for an unrelated conviction by the MDOC, with the release date February 9th, 2012.

On December 30th, 2011, Mr. Onumonu was arraigned on a 1999 cold case homicide charge for the counts of 1- Felony Murder, 2- First Degree Murder, and 3- Receiving/Concealing stolen property- motor vehical by the Wayne County Prosecutor's office.

On January 19th, 2012, 36th District Court Magistrate Judge Ronald Giles, held a preliminary examination dismissing counts 1 & 2, binding Mr. Onumonu over on count 3.

From January 26th, 2012, until April 26th, 2012, where Circuit Court Judge Daniel Hathaway remanded the case back to the District Court, refused to grant defenses motion to dismiss count 3 as statutorily time barred to allow the state to prepare a memorandum of law, to keep Mr. Onumonu from being paroled.

June 15th, 2012, after remand from Circuit Court, dismissed counts 1 & 2 against Mr. Onumonu at second preliminary examination hearing. The state asked for a stay to take an appeal to keep Mr. Onumonu from being paroled. Court granted stay, and gave a 21 day filing deadline for May 20th, 2012.

May 18th, 2012, state filed a renewed motion to remand instead of an appeal as of right. All court proceedings came to a halt. On August 1st, 2012, Mr. Onumonu sent a letter to the Michigan Reformatory Correctional Facility's records office, requesting a detainer check and a 180 day notice to be sent to the Wayne county prosecutor.

On August 21st, 2012, during a hearing for removal of counsel in pro-per, before 36th District court, Mr. Onumonu made a challenge to his detainment on the record concerning no charges against him. There was no appearance for the state.

On November 13th, 2012, after months of no progress in or by the court, Mr. Onumonu sought relief by way of a state habeas corpus, filed to the Circuit Court Judge Daniel Hathaway, challenging his unlawful detainment. The court ignored the filing, and failed to respond or rule.

On December 11th, 2012, Mr. Onumonu, filed in pro-se a motion to dismiss, to dissolve the stay, to dismiss the states appeal, and to waive awaited counsel before Circuit Court Judge Daniel Hathaway to obtain his liberty. On January 3rd, 2013, all motions were denied but one, motion to waive awaited counsel.

March 22nd, 2013, Judge Hathaway granted the states December 7th, 2012 appeal of District Courts decision to dismiss, and reinstated First Degree Murder charge. Defense requested a stay to appeal.

From March 22nd, 2013 through December 2nd, 2013 were months of stays on appeal. In same month, Mr. Onumonu was transfered from Michigan Reformatory facility to Cotton correctional facility. On April 5th, 2014, by way of letter, Mr. Onumonu requested a copy of any detainer holds, and a copy of a 180 day notice to the Cotton facility's records office.

On April 20th, 2014, Mr. Onumonu filed a grievance in an attempt to

gain the above requested documents. On April 30th, 2014, records supervisor Valerie Lashley, responded to the grievance and produced a copy of a detainer dated 8-1-12, and a 180 day notice to the prosecutor dated April 30th, 2014.

It is clearly established that Mr. Onumonu was unlawfully retained by the Circuit court Judge Daniel Hathaway, and Mr. Onumonu did attempt to assert his right to a speedy trial, and the Court of Appeals err in its decision.

**GROUNDS 2:** Mr. Onumonu was denied due process of law under the Fifth and Fourteenth Amendment to the United States Constitution, when the lower courts allowed the state to circumvent the appellate procedure by appealing a Magistrates decision through means of a motion to Amend the Information, rather than a formal Appeal by right on two occasions, and blatantly disregarding the jurisdictional default to ultimately abuse its discrection by replacing its own opinion for that of a magistrates.

**SUPPORTING FACTS:**

On January 19th, 2012, District Court Magistrate Judge Ronald Giles, dismissed counts 1- felony murder and 2- first degree murder against Mr. Onumonu, at preliminary examination, but bound him over on count 3- receiving and concealing stolen property.

On January 26th, 2012, Mr. Onumonu was arraigned on count 3 before Circuit court Judge Daniel Hathaway. Due to this case deriving from 1999, defense motion to dismiss count 3 as statutorily timed barred. Court denied defense motion.

On February 3rd, 2012, the state filed a motion to amend the information, and the defense again filed a motion to dismiss count 3 as time barred. Court again denied defense motion.

On April 26th, 2012, the Circuit court held a hearing on the states motion to amend the information, rather than an appeal by right, dismissed count 3 as time barred, then granted states motion to amend, remanding the case back before the District court.

On June 15th, 2012, District court held a second prelim after states motion to amend. Again District court dismissed counts 1 & 2. The state then ask for a stay to take an appeal. Court granted stay and gave a July 20th, 2012 filing deadline, 21 days.

On July 18th, 2012, the state filed a Renewed motion to amend the information after remand to add charges of first degree murder and felony murder, rather than an appeal.

On October 29th, 2012, the prosecutor Micheal Reynolds, and Circuit court Judge Daniel Hathaway met in the judges chambers to form a new appealing filing deadline, by authorizing the states motion to amend the order of remand back to the District court without any present representation on Mr. Onumonu's behalf.

On November 16th, 2012, District court responded with an order clarifying Onumonu's motion to dismiss counsel being granted, and the states motion to stay pending an appeal had been granted. The Circuit court than authorized the state to use this response as a new formal filing appeal deadline.

On December 7th, 2012, the state then filed an appeal of the June 15th, 2012, magistrates decision dismissing count 1 & 2.

On March 22nd, 2013, Circuit court Judge Daniel Hathaway heard arguments

on states newly appeal of District courts dismissal. Court granted appeal, then replaced its opinion for that of the District courts, ultimately finding District court abused his discretion, to reinstate first degree murder count.

It is clear that the Circuit court assisted in the violation of Mr. Onumonu's rights by allowing the state to circumvent the appellant process, then abused its discrection by replacing its opinion for that of a magistrates.

**GROUNDS 3:** Mr. Onumonu was denied Due Process Of Law under the Fifth and Fourteenth Amendment to the United States Constitution, where the lower Courts allowed him to stand trial for the charge of felony murder, that had not been formally reinstated nor formally reindicted.

**SUPPORTING FACTS:**

On June 15th, 2012, District court Magistrate Judge Ronald Giles, dismissed count 1- Felony murder and 2- First degree murder for the second time at the remanded preliminary examination. After the Circuit allowed the state to circumvent the appeal procedure addressed in grounds 2, the state filed a formal appeal.

On March 22nd, 2013, Circuit court Judge Daniel Hathaway granted the states appeal of the District courts dismissal, then reinstated the charge of first degree murder. Court then signed the written order on same day.

On July 20th, 2015, Mr. Onumonu stood trial for the count 1- felony

murder which had never been reinstated. Mr. Onumonu was ultimately found guilty of the theory of felony murder and first degree murder.

It is clear that Mr. Onumonu's rights had been violated when he stood trial for a charge that had not been reinstated.

**GROUNDS 4:** Mr. Onumonu was denied Due Process of Law under the Fourteenth Amendment to the United States Constitution, where the lower courts allowed the suggestive and unnecessary in-court identification, rather than a photographic line up.


## SUPPORTING FACTS:

In 1999, the states witness Gwendoln Gardner described a black male riding with the victim 9 hours prior to the crime. This witness identified a composite sketch of a suspect.

On January 19th, 2012, during the preliminary examination hearing before District Magistrate Judge Ronald Giles, Mr. Onumonu was singly shown to this witness Gwendolyn Gardner.

During this preliminary examination, Ms. Gardner was asked to describe the man she saw. Her description of the man did not match Mr. Onumonu, and the charges were dismissed.

After years of delays, the original sketch Ms. Gardner identified in her 1999 statement appeared, and she was asked to give an identification of this sketch before District court on January 29th, 2015. At same hearing, Ms. Gardner Identified sketch as the sketch she was shown at original prelim, but was not, then Identified Mr. Onumonu as the person who "looks like the man" she saw with Ms. Klocek, the victim in this case.

On July 23rd, 2015, Ms. Gardner testified at Mr. Onumonu's trial and identified him as "he appears to be the gentleman the defendant there". On cross examination, she identified him as " looking similar to the man".

It had been 13 years from her original description when Mr. Onumonu was shown to Ms. Gardner, during the initial prelim, then an initial 3 years after seeing Mr. Onumonu before she made a half identification.

The state failed or intentionally did not arrange a photographic line up prior to the original prelim knowing it could and would result in a misidentification. This tatic by the state was unethical and violated Mr. Onumonu's rights to due process.

**GROUNDS 5:** Mr. Onumonu was denied Due Process of the Law under the Fifth and Fourteenth Amendment to the United State Constitution, when the lower courts upheld the conviction of Mr. Onumonu where the evidence presented was insufficient to sustain a felony murder/first degree conviction.

## SUPPORTING FACTS:

On July 20th, 2015, Mr. Onumonu stood trial for count 1-felony murder and count 2-first degree murder. The evidence presented was all circumstantial.

The state presented an annual tax earning form without an actual date to substantiate Mr. Onumonu's place of employment around the day and time of the crime, and to connect him to a glove that was alleged to be recovered from Ms. Klocek's car two days after the crime, and that Mr. Onumonu's DNA along with an unidentified males DNA was in or on this glove. The state also presented the witness Ms. Gwendolyn Gardner, who was addressed in grounds 4. Finally, the state made mention that Ms. Klocek never left her peruse and that it was never recovered.

The states case lacked any witness to the murder its self, they also lacked any tangible evidence linking Mr. Onumonu to the homicide scene or to any robbery or abduction of Ms. Klocek. It is clear that this verdict was arrived at by mere speculation and has caused a serious miscarriage of justice.

**GROUNDS 6:** Mr. Onumonu was denied Due Process Of Law under the Fifth and Fourteenth Amendment to the United States Constitution, when the appeals court supported the lower courts denial of his request of a Ginther hearing to establish the factual predicate claim of Ineffective Assistance of counsel.

## SUPPORTING FACTS:

Appointed Trial counselor Mark Procida, violated Mr. Onumonu's right to present a defense, when he decided to offer no defense on Mr. Onumonu's behalf without Mr. Onumonu's consent to do so in a very highly circumstantial case.

Despite Mr. Onumonu's request for witnesses, trial counsel decided not to call them, Knowing they could establish Mr. Onumonu's alternate theory. Trial counselor also convinced Mr. Onumonu not to take the stand by fraudulent information.

Trial counselor refused to challenge the admission of the identification, refused to challenge the admission of the gloves chain of custody, failed to object to the submission of the states suggestive use of a sketch and refused to obtain certain documents to discredit the states theory.

It is clear the lower courts violated Mr. Onumonu's right to substantiate an ineffective assistance of counsel claim by denying him a Ginther hearing.

**GROUNDS 7:** Mr. Onumonu was denied Due Process of the Law under the Fourteenth Amendment to the United States Constitution, when the lower courts denied him a full separate evidentiary hearing on the kevlar glove.

**SUPPORT FACTS:**

On July 20th, 2015, Mr. Onumonu in pro-se, presented argument on his motion to suppress evidence during the pretrial hearing before trial Circuit court Judge Alexis Glenndening.

Circuit court Judge incorrectly denied his motion to suppress as a pretrial issue, abusing her discretion by not allowing a full evidentiary hearing despite acknowledging this requirement.

It is clear this denial by the lower courts is a violation of Mr. Onumonu's right to due process.


**GROUNDS 8:** Mr. Onumonu was denied Due Process of Law under the Fourteenth Amendment to the United States Constitution, when the court of appeals mischaracterized Mr. Onumonu's argument of the evidence as a concession.


**SUPPORTING FACTS:**

The Court of Appeals made a highly palpable error stating that Mr. Onumonu concedes that Gardners identification and the DNA of the kevlar glove supports an inference that he was in Ms. Klocek's vehical.

Mr. Onumonu has never and will never ever concede to such a thing knowing he was framed. This is a deliberate attempt by the Appeals court to hinder any futher challenges that are necessary to prove his innocence.

It is clear this statement violates Mr. Onumonu's right to due process.

### THIRD JUDICIAL CIRCUIT COURT CRIMINAL DIVISION
### COUNTY OF WAYNE
### STATE OF MICHIGAN

STATE OF MICHIGAN

v.

NOSAKHARE ONUMONU

HON. KEVIN J.COX

Case No. 12-000687-01-FH

_____/

## OPINION AND ORDER REGARDING MOTION FOR A NEW TRIAL AND TO CORRECT AN INVALID SENTENCE

At a session of Court held at the Frank Murphy Hall of Justice
in the City of Detroit, Wayne County, Michigan
on: July 28, 2016

This matter is before the Court on Defendant's motion for a new trial, MCR 6.431, and to correct an invalid sentence, MCR 6.429. Both parties submitted pleadings and presented oral argument. The Court has reviewed the pleadings, court file, and transcripts in this matter. For the reasons stated below, Defendant's motion for a new trial, including his request for a *Ginther* hearing, is **DENIED**. Defendant's request to correct an invalid sentence is **GRANTED**.

### Background

Following a jury trial, Defendant was convicted of first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.316(1)(b), for the March 2, 1999 killing of Helen Klocek. Mrs. Klocek's body was found the evening of March 2, 1999 in an alley. The medical examiner determined that Mrs. Klocek's death was a homicide caused by manual strangulation and blunt force trauma.

In the early afternoon of March 2, 1999 Gwendolyn Gardner was driving on Joy Road and observed Mrs. Klocek driving slowly on Joy Road with an African American male in the passenger seat. The passenger appeared to be instructing Mrs. Klocek where to go. Ms. Gardner reported her observations to the Detroit Police after hearing about Mrs. Klocek's death on the news. In March 1999, she worked with an officer to create a sketch of the man she saw with Mrs. Klocek. At trial, she identified the Defendant as the man that she saw in the vehicle with Mrs. Klocek.

A few days after the murder, Mrs. Klocek's vehicle was found abandoned in a parking lot. In March 1999, Officer David Babcock of the Detroit Police Department collected evidence from the vehicle, including a Kevlar glove, which was found in the back seat. The glove smelled like gasoline. The driver's seat in Mrs. Klocek's vehicle had been set on fire, but the fire burned out before consuming the entire car.

1

The Kevlar glove was subsequently tested for DNA. Two sets of DNA were discovered on the glove. Defendant was the major DNA donor. The second set of DNA could not be identified.

The Kevlar glove was the same type of glove used by PDC Glass Company, which Defendant worked for in 1999. PDC Glass Company was located in the vicinity where Mrs. Klocek was last seen. Defendant also lived in close proximity to where Mrs. Klocek's vehicle was found, burned and abandoned.

In 2012, Defendant was charged with premeditated murder, felony murder, and receiving and concealing stolen property. A preliminary exam was held on January 19, 2012. Following the exam, the district court dismissed both murder charges. The district court found that the prosecutor failed to demonstrate a nexus between Defendant and the murder. At the preliminary exam, Ms. Gardner was unable to recall the appearance of the man she saw in the car with Mrs. Klocek. Defendant was bound over to the circuit court on the receiving and concealing stolen property charge.

On April 26, 2012 the circuit court remanded the matter back to the district court to take additional evidence regarding the murder charges. The district court was to take testimony from the sketch artist who, in March 1999, met with Ms. Gardner and based on her observation, created a sketch of the man she saw with Mrs. Klocek. The district court was also to take evidence of Defendant's mug shot from 1999. The circuit court dismissed the receiving and concealing stolen property count as being time barred.

On June 15, 2012 the district court held a second preliminary exam pursuant to the remand order of the circuit court. The 1999 sketch of the man in the vehicle that was based on Ms. Gardner's description was put into evidence through the testimony of the sketch artist. However, for a second time, the district court did not find probable cause that Defendant committed the murder. The district court noted that although the sketch resembled the Defendant's 1999 mug shot, there was no nexus connecting the Defendant to the murder without rely on inference upon inference. The district court dismissed the charges.

The prosecutor appealed the dismissal, and on March 22, 2013 the circuit court reinstated the murder charges against Defendant. On November 19, 2014 the circuit court remanded the matter back to the district court to take additional evidence regarding additional sketches of suspects that Ms. Gardner had been shown in March 1999. On January 29, 2015 the district court held the preliminary exam. The district court bound Defendant over on the murder charges.

The matter was tried before a jury. Following the trial, Defendant was found guilty of both premeditated murder and felony murder. The court sentenced Defendant to concurrent terms of life in prison.

Defendant has filed an appeal of those convictions and, pending that appeal, has filed this motion for a new trial and to correct his sentence.

## Analysis

### I. Motion for New Trial

In his motion for a new trial, Defendant argues that the Court should vacate his conviction and sentence because it is based on insufficient evidence and because he was denied effective assistance of counsel. This Court may order a new trial on "any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). This Court does not find that Defendant has demonstrated an error that would support reversal of the conviction. Nor does the Court find that Defendant has demonstrated that the verdict against him resulted in a miscarriage of justice.

### A. Sufficiency of the Evidence

Defendant asserts that there was insufficient evidence to convict him. He raises several arguments regarding the evidence presented at trial. It is well recognized that the threshold necessary for a judge to overrule a jury and grant a new trial "is unquestionably among the highest in our law." *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). "A new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998).

In analyzing the sufficiency of the evidence, this Court must consider "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 400. This analysis is to be applied regardless of "whether the evidence [under consideration] is direct or circumstantial." *Id.*

### 1. Gwendolyn Gardner's Testimony

In support of his argument that the evidence against him was insufficient to support a conviction of murder, Defendant asserts that Gwendolyn Gardner's testimony identifying him as the man in Mrs. Kolcek's car was unreliable. At trial, when asked if she could identify the man she saw in the vehicle with Mrs. Klocek on the day of the murder, Ms. Gardner testified "[i]t appears to be the gentleman, the Defendant there."

Defendant asserts that Ms. Gardner's testimony is unreliable because her initial description of the man in the vehicle purportedly did not match the Defendant: she identified the man as having a light complexion. Defendant also asserts that Ms. Gardner's testimony is unreliable because she was unable to recall the face of the man she saw in Mrs. Klocek's car when testifying at the first preliminary exam.[1]

---

[1] Contrary to Defendant's assertion, Ms. Gardner did not repeatedly fail to identify Defendant as the man in Mrs. Klocek's vehicle. At the first preliminary exam, Ms. Gardner testified that she could not recall the face of the man in the vehicle. Ms. Gardner did not testify at the second preliminary exam. When Ms. Gardner testified at the third preliminary exam, she identified Defendant as the man in the vehicle and explained that she did not identify him at the first exam because she was never asked to identify him. At trial, Ms. Gardner identified Defendant as the man she saw in the car with Mrs. Klocek. Based on this history, the Court does not find that Ms. Gardner's testimony is

3

Both of the issues that Defendant raises go to Ms. Gardner's credibility. See *People v Barclay*, 208 Mich App 670, 676; 528 NW2d 842 (1995); *People v Rojem*, 99 Mich App 452, 457; 297 NW2d 698 (1980). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury." *Lemmon*, 456 Mich at 642. This Court is not permitted to invade the province of the jury and reassess the credibility of a witness. *Id.* Only in very limited circumstances would issues regarding a witness' credibility be sufficient grounds to grant a new trial. *Id.* A new trial may be granted where the testimony: contradicts indisputable physical facts or laws, is patently incredible, defies physical realities, is so inherently implausible that no reasonable juror could believe it, or was seriously impeached where the case was marked by uncertainties and discrepancies. *Id.* The Court does not find that any of these circumstances exist in this case.

Moreover, the credibility issues that Defendant now raises were explored by defense counsel during trial. Ms. Gardner was questioned on cross-examination regarding the description she initially provided to the police, which included her description of the suspect's complexion. Ms. Gardner was also cross-examined about the testimony she provided at the first preliminary exam. She acknowledged that at the preliminary exam, her recollection of what she was testifying too was "pretty much [good] but not totally because [she] hadn't been contacted in years regarding the case." Defense counsel noted that Ms. Gardner's in-court identification came fifteen years after she observed Mrs. Klocek's car. And in closing, defense counsel emphasized Ms. Gardner's credibility.

Absent certain circumstances, this Court cannot sit as a thirteenth juror and assess witness credibility as a basis for overturning a conviction and granting a new trial. And none of the circumstances that would warrant this Court to assess Ms. Gardner's credibility are present in this case. Accordingly, Defendant's argument that Ms. Gardner's testimony does not support his convictions is unavailing.

## 2. Circumstantial Evidence

Defendant also argues that the evidence against him was insufficient because it was entirely circumstantial. However, the law is clear that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400. "[T]he prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 424; 646 NW2d 158 (2002). "[I]t is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences," and there is no prohibition on building inference upon inference. *Id.* at 428.

Defendant specifically asserts there is no direct evidence that the murder was committed with premeditation and deliberation. "In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Kelly*, 231 Mich App 627, 642; 588 NW2d

---

patently incredible, inherently implausible, or gives rise to uncertainties and discrepancies such that this Court should overrule the jury's credibility determination.

4890 (1998). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Plummer*, 229 Mich App at 300. "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Kelly*, 231 Mich App at 642.

Significantly, "[p]remeditation and deliberation need not be established by direct evidence." *People v Waters*, 118 Mich App 176, 186; 324 NW2d 564 (1982). "Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). Moreover, the "elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *Kelly*, 231 Mich App at 642. For example, courts have held that, "[m]anual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.' [And] a defendant's attempt to conceal the killing can be used as evidence of premeditation." *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003) (citations omitted).

Here, the medical examiner testified that Mrs. Klocek died as a result of blunt trauma and manual strangulation. He also testified that when someone is being strangled, it takes 20-30 seconds for them to lose consciousness and minutes before brain damage occurs. This testimony would warrant a reasonable juror in finding the killing was done with deliberation. There was also testimony that Mrs. Klocek's vehicle was set on fire and a Kevlar glove smelling of gasoline was in the vehicle, which supports a finding of premeditation. This gives rise to the inference that there was an attempt to destroy evidence relating to the murder that may have been in the vehicle. The circumstances of Mrs. Klocek's death and the attempted destruction of her vehicle would warrant a reasonable juror in finding that the murder in this case was done with premeditation and deliberation.

Defendant also asserts that there is no direct evidence identifying him as the murderer. He argues that there was no direct evidence that he was with Mrs. Klocek when she was murdered. He asserts that there is insufficient evidence that he was with Mrs. Klocek at all – Ms. Gardner initially indicated the man in the car had a light complexion, and the Kevlar glove in Mrs. Klocek's vehicle that contained his DNA also contained other unidentifiable DNA. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Making all credibility determinations and inferences in favor of the prosecution, the Court finds that a reasonable juror would be warranted in finding that Defendant did commit this murder. There is direct evidence that Defendant was with Mrs. Klocek prior to the murder, in the area where her body was found. Ms. Gardner testified that she saw Defendant in Mrs. Klocek's car, with Mrs. Klocek on the afternoon of the murder near the area where Mrs. Klocek's body was later found. There is also evidence, from which a reasonable juror could infer, that Defendant drove Mrs. Klocek's vehicle away from where her body was found and attempted to destroy it and any evidence it might contain. The vehicle was found at a second location, away from where Mrs. Klocek's body was found and within walking distance of Defendant's home. The driver's seat in the vehicle had been set on fire. A Kevlar glove that was found in the vehicle smelled like gasoline, had Defendant's DNA on it, and was from a business where Defendant had worked. This gives rise to the inference that Defendant attempted to burn the car to destroy evidence. "Actions by a defendant such as . . . attempts to destroy evidence may be considered by the jury as evidence of guilt." *People v Lytal*, 119 Mich App 562, 575; 326 NW2d 559

5

(1982). Because Defendant was seen with Mrs. Klocek before her murder, and because there is evidence tying him to her vehicle and the attempted destruction of her vehicle after he left her, a reasonable juror could conclude that Defendant did murder Mrs. Klocek.

The Court also finds that there was sufficient evidence supporting the conviction for felony murder. There was evidence that Mrs. Klocek's purse, which was with her the morning of the murder, was not with her body when it was discovered or in her vehicle when it was discovered. Moreover, there is evidence that Mrs. Klocek's vehicle and keys were driven away from where her body was found and that Defendant attempted to set the car on fire, also evincing an intent to commit larceny regarding the vehicle.

The Court finds that there was sufficient evidence that would warrant a reasonable juror in finding Defendant guilty of premeditated murder and felony murder. Defendant's request for a new trial based on the sufficiency of the evidence is denied.

## B. Ineffective Assistance of Counsel

Defendant also asserts that he is entitled to a new trial because he was denied effective assistance of counsel in violation of his Sixth Amendment right. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). In determining whether trial counsel's performance was ineffective, the Court applies the test set forth in *Strickland v Washington*, 446 US 668; 100 S Ct 1932; 64 L Ed 2d 593 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 US at 687. In showing deficient performance, a defendant must demonstrate that counsel's "performance was below an objective standard of reasonableness under professional norms." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). In order to show prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

"Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Odom*, 276 Mich App at 415.

In raising his claims of ineffective assistance of counsel, Defendant requests a *Ginther* hearing. A *Ginther* hearing is appropriate when the claims regarding ineffective assistance of counsel depend on facts not of record or present a factual dispute. *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). Here, the Court finds that a *Ginther* hearing is not warranted. As addressed below, each issue that Defendant raises is either one that can be resolved using the record created at trial, or is one that is made without an offer of proof that would give rise to a factual dispute.

1. **The Kevlar Glove**

Defendant asserts that counsel was ineffective for failing to pursue the theory that the Kevlar glove was not in Mrs. Klocek's car when the car was inventoried by police in March 1999. In support of this theory, Defendant asserts that it was not until 2008 that the existence of the Kevlar glove was noted in any police documents. He points to two separate documents dated March 30, 1999 labeled Request for Laboratory Service, that list several items of evidence recovered from Mrs. Klocek's vehicle, but do not include the Kevlar glove.

The Court does not find that counsel acted below the reasonable standard of professional norms in not pursuing this theory. Furthermore, the Court finds that a *Ginther* hearing is unnecessary in reaching this conclusion because the record contains evidence sufficient for the Court to make its ruling. And Defendant has not presented any evidence to contradict what is in the record that would give rise to a factual dispute.

A review of the record indicates that, contrary to Defendant's assertion, Officer David Babcock documented the discovery of the Kevlar glove in Mrs. Klocek's vehicle in March 1999. Officer Babcock, who conducted the initial search of Mrs. Klocek's vehicle in March 1999 took several photographs of the vehicle, which were admitted into evidence at trial. The photographs included three photographs of the Kevlar glove lying in the back seat of the vehicle.[2] Officer Babcock testified that he placed the glove into evidence in March 1999. He dated the evidence envelope that he used for the glove with the date of March 10, 1999. Moreover, the Evidence Technician's Report that Officer Babcock authored, which was referenced at trial and offered as an exhibit for this motion, provides that on March 8, 1999 a glove was found on the back seat of Mrs. Klocek's vehicle. The record contains evidence that the Kevlar glove was in Mrs. Klocek's vehicle in March 1999. The record completely undermines the theory that Defendant claims defense counsel should have advanced. The Court does not find counsel was ineffective because "[f]ailing to advance a meritless argument . . . does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Moreover, Defendant does not present any facts to controvert the evidence in the record and demonstrate that this theory has merit and should have been raised. He presents two Requests for Laboratory Services that were created in March 1999 that do not mention the Kevlar glove. However, at trial, defense counsel explored why the glove was not mentioned in these requests. Defense counsel cross-examined Officer Henry Ellis— the officer who prepared both Requests for Laboratory Service—regarding the fact the Kevlar glove was not listed in either request. Officer Ellis testified that he was aware of the glove, but did not include it in either request for

---

[2] People's Exhibits 50, 51, and 52.

7

testing because at that point in the investigation the police did not have a suspect. The glove would not have been tested unless the police had a suspect.

Defendant has not demonstrated that counsel's failure to argue that the glove was not in Mrs. Klocek's vehicle in March 1999 constituted a deficient performance.[3] The Court finds that counsel was not ineffective.

## 2. The Evidence Technician Report

Defendant also asserts that counsel was ineffective for failing to cross-examine Officer Babcock regarding three aspects of the Evidence Technician Report that he authored. The report was not admitted into evidence at trial. But, it was referenced and relied upon by Officer Babcock in his testimony. Defendant specifically asserts that counsel should have cross-examined Officer Babcock regarding a date discrepancy in the report, his description of the Kevlar glove, and the photographs he took of the glove. The Court does not find that counsel was ineffective in his cross-examination of Officer Babcock. The Court further finds that a *Ginther* hearing is not warranted because Defendant does not present any factual dispute that necessitates a review of matters beyond the scope of the record.

First, Defendant asserts that counsel erred in failing to cross-examine Officer Babcock about the fact that the date listed at the top of his report was March 2010 even though the officer claimed he created the report in March 1999. On direct-examination, Officer Babcock acknowledged the discrepancy in the dates. He testified that the March 2010 date was "definitely a typo," and pointed out that the body of the report listed March 1999 as the date when the inventory search was done. Based on the testimony elicited on direct-examination, the Court does not find that counsel's decision not to cross-examine on this issue constituted a deficient performance or caused prejudice. A "defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Dendel*, 481 Mich 114, 125; 748 NW2d 859 (2008). And Defendant has not made an offer of proof that relevant information could have been elicited had counsel questioned Officer Babcock on this issue.

Defendant also asserts that counsel was ineffective for failing to cross-examine Officer Babcock on his description of the Kevlar glove as a left-handed glove. The glove was later identified by other witnesses as a right-handed glove. However, counsel did cross-examine Officer Babcock about this issue. Contrary to Defendant's assertions, defense counsel cross-examined Officer Babcock regarding the fact that his report identified the glove as a left handed glove. He further questioned Officer Babcock about the fact the glove that was tested was described by others as a right-handed glove.

Defendant also asserts that counsel was ineffective for failing to cross-examine Officer Babcock regarding the photographs he took of the glove in Mrs. Klocek's vehicle. Defendant does not assert what issues counsel should have raised regarding the photographs. Because Defendant does not identify what specific issues counsel should have addressed regarding the photographs the Court cannot review the merit of his claim.

---

[3] Because the Court finds that Defendant has failed to satisfy the first prong of the Strickland test, it will not analyze the second prong. See *Strickland*, 466 US at 697.

8

Defendant has not demonstrated that counsel's cross-examination of Officer Babcock constituted a deficient performance. The Court finds that counsel was not ineffective.

### 3.   The Chain of Custody

Defendant asserts that trial counsel was ineffective for failing to determine the chain of custody for the Kevlar glove. The admission of real evidence does not require a perfect chain of custody. *People v White*, 208 Mich App 126, 130; 527 NW2d 34 (1994). The record shows that several witnesses testified regarding the chain of custody for the glove. The record also shows that defense counsel cross-examined these witnesses regarding the chain of custody. Defendant does not assert any specific errors that defense counsel should have addressed, and he does not indicate that there are issues outside the scope of the record for the Court to consider. Accordingly, the Court finds that a *Ginther* hearing is not necessary on this issue.

For each witness that addressed the chain of custody for the glove, defense counsel cross-examined that witness on any potential gaps. Officer Babcock testified that he collected the glove from Mrs. Klocek's vehicle and placed it into evidence under tag number 447138-99. Defense counsel cross-examined Officer Babcock regarding: who had access to the vehicle before it came into police possession, who wrote the tag number on the evidence envelope, whether another piece of evidence could have the same tag number, and whether Officer Babcock placed the evidence into storage without placing a tag on it. Henry Ellis testified that he did not submit the glove for testing in 1999. Defense counsel questioned Officer Ellis regarding whether he knew where the glove was located during this time. Mikehle Hafner testified that he received the glove in 2008 from the Detroit Police Department property control room for testing. Defense counsel cross-examined him regarding whether there was any documentation regarding how evidence is moved and stored in the property control room. William Steiner testified that he obtained samples for testing from the glove. Defense counsel questioned him about where the glove was received from and how the glove was stored before it came into his possession.

The record demonstrates that defense counsel cross-examined several witnesses regarding various aspects of the chain of custody for the Kevlar glove. The Court does not find that counsel's performance fell below an objective standard of reasonableness. Moreover, there is no indication that Defendant was prejudiced. Defendant does not identify how the "failure to determine" the chain of custody was prejudicial. At trial, Officer Babcock identified the Kevlar glove in evidence as the one he collected from the vehicle. That same glove was also identified at trial by Jessica Drager as the glove she obtained the DNA samples from that matched Defendant. Accordingly, the Court does not find that counsel was ineffective.

### 4.   The Affidavit

Defendant asserts that counsel was ineffective for failing to cross-examine Officer Bruce Christnagel. Defendant asserts that counsel should have questioned Officer Christnagel regarding the affidavit and search warrant that he prepared to obtain a buccal swab from Defendant. In the affidavit for the search warrant, Officer Christnagel averred that "investigators . . . determined that the [Kevlar] glove from the homicide scene that the DNA profile was obtained from was unique to the glass industry." Defendant asserts that this averment indicates the glove was found near Mrs. Klocek's body, contrary to evidence that it was found in Mrs.

9

Klocek's car. Defendant argues that counsel should have questioned Officer Christnagel about this statement.

Defendant reads facts into the affidavit that are not there. The affidavit does not specify that the glove was found near Mrs. Klocek's body. The affidavit indicates that the glove was found at the homicide scene. The vehicle was identified as a scene in this homicide in the Evidence Technician Report.

The officers who processed the scene where the body was found did not indicate there was a glove at the scene where the body was found. The record indicates that the glove was found in Mrs. Klocek's vehicle in March 1999. Officer Christnagel's affidavit does not contradict this. Defense counsel was not defective in failing to cross-examine Officer Christnagel on this matter.

### 5.  Additional Witnesses

Defendant asserts that trial counsel was ineffective for failing to call two witnesses to testify that other suspects were identified in this case. Preliminarily, the Court notes that prior to resting at trial, defense counsel stated that he and Defendant had "discussed in terms of trial strategy where the defense would be, what witnesses we would present and I think we have reached a consensus that , A. although it is his choice not to testify he chooses not to and that being, we are reasoning [sic] without calling witnesses." When asked by the judge whether counsel's statements were true, Defendant replied "yes ma'am."

Notwithstanding, the Court does not find that counsel was ineffective for failing to call the witnesses Defendant now asserts should have been called. Defendant's offer of proof does not give rise to a factual dispute that warrants a *Ginther* hearing. Defendant's evidence does not demonstrate that he was deprived of the opportunity to present a *substantial* defense.

Defendant asserts that counsel should have called Detective Kevin Lauterwasser who received a tip that a man named Arthur Alley, who bought drugs in the area where Mrs. Klocek's body was found, had been talking about robbing people and had worked for a nearby plating company. At oral argument, Defendant presented evidence that Mr. Alley took a polygraph regarding his involvement in this murder. Mr. Alley was also interviewed regarding the murder. The contents of the interview with Mr. Alley would not have been admissible at trial through Detective Lauterwasser. MRE 802. And, any "testimony concerning the result of a polygraph examination is not admissible at trial." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

Defendant also asserts that counsel should have called Marion Jones as a witness. Defendant argues that Mr. Jones contacted police in March 1999. Defendant presents Marion Jones' witness statement, in which he concedes he does not have knowledge of the murder, but that he believed the composite sketch produced in 1999 looked like a man named Gary Stewart.

"[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Defendant asserts that these witnesses would have demonstrated that police identified and investigated other suspects in this murder. However, based on the evidence Defendant presents, it appears to the Court that

these witnesses would only have established that two members of the public each informed the police of a person they believed could have been a suspect in the case. There is no evidence that police pressed charges against either of the individuals or that these individuals became official suspects in the case. Defendant does not argue that the investigations of these individuals were deficient, such that they should have been charged or investigated further. Based on Defendant's argument for calling these witnesses, the Court does not find that counsel was ineffective. His failure to call these witnesses did not deprive Defendant of a substantial defense

### 6.  Identification of Sketches

Defendant asserts that counsel was ineffective for failing to cross-examine Gwendolyn Gardner about sketches she was presented of other suspects, and her prior inconsistent statements regarding those sketches. However, the record reflects that counsel did question Ms. Gardner about the sketches that were shown to her when she made her initial statement on March 9, 1999. At trial, defense counsel presented Ms. Gardner with two sketches and questioned her about whether she had previously stated that the suspects in the sketches looked similar to the man she saw in Mrs. Klocek's vehicle.

### 7.  The Presentence Investigation Report

At oral argument, Defendant asserted that counsel was ineffective for failing to cross-examine witness Faye Bowen on misinformation that was in the presentence investigation report [PSIR] she prepared following her interview with Defendant in December 1999. Defendant alleges that the report misidentified his place of birth and incorrectly stated that he had a twin sister. Defendant asserts that raising these issues would have discredited the contents of the report, which was used by the prosecution to show that Defendant worked and lived near the areas where Mrs. Klocek's body and car were found. The report was also used to show that, at the time of the murder, Defendant worked for PDC Glass Company, which used Kevlar gloves like the one found in Mrs. Klocek's car. The PSIR was not admitted into evidence. At trial, the parties stipulated that Ms. Bowen would not reveal the purpose of her interview with Defendant, presumably to ensure the jury would not learn of Defendant's criminal history.

Defendant has made no offer of proof that the facts he claims were incorrect in the PSIR were actually incorrect. Moreover, there is no suggestion that Ms. Bowen would have known the accuracy of the information regarding Defendant's family and residence since her testimony was based on the answers that she recorded as having been given by the Defendant. Thus, there is no indication that she could be cross-examined as to the truth of the answers that she recorded in the PSIR.

Moreover, it does not appear that counsel's failure to address these two issues actually prejudiced Defendant in light of the evidence as a whole. A 1999 W-2 that was placed into evidence showed that the Defendant's address in 1999 was the same address provided in the PSIR. It also showed that Defendant worked at PDC Glass Company in 1999. With this corroborating evidence, it does not appear that counsel's failure to question Ms. Bowen about two unrelated, alleged inconsistencies was prejudicial.

Defendant also asserts that counsel was deficient for failing to rebut evidence that Defendant lived near the location where Mrs. Klocek's vehicle was found and worked at PDC Glass

11

Company at the time of the murder. Defendant does not indicate what evidence counsel should or could have presented to support this argument. Moreover, counsel did cross examine witnesses regarding the fact that Defendant's 1999 W-2 did not identify what location he worked at or what months in 1999 he worked for PDC Glass Company.

Based on the above, the Court finds that defense counsel was not ineffective. Defendant is not entitled to a new trial.

## II. Motion to Correct Invalid Sentence

Defendant also asks the Court to correct his sentence. Defendant was sentenced to life in prison for felony murder and life in prison for premeditated murder. "The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law." MCR 6.429(A).

## A. The Felony Murder Charge

Defendant asserts that he cannot be sentenced for felony murder because the felony murder charge was dismissed. Defendant argues that following the district court's dismissal of the charges against him at the June 15, 2012 preliminary exam, the felony murder charge was never reinstated. However, the record does not support Defendant's assertion. The record shows that: the charge of felony murder was reinstated following an appeal of the district court's dismissal; Defendant was bound over on the charge at a preliminary exam held on January 29, 2015; and Defendant was arraigned on the charge on February 5, 2015.

Defendant correctly notes that the district court dismissed the felony murder and premeditated murder charges on June 15, 2012. The prosecutor appealed the June 15, 2012 decision of the district court and asked the circuit court to order that Defendant be bound over on the charges of premeditated murder and felony murder. On March 22, 2013 the circuit court judge stated on the record "I am therefore, granting the Plaintiff's appeal and reinstating the charge of first-degree murder against the Defendant at this time." The circuit court did not specify whether it was reinstating one or both of the first-degree murder charges. However, significantly, the court *did not* hold that it was only granting the appeal in part, which would indicate it was reinstating only one of the two charges.

At the May 6, 2013 pretrial the circuit court summarized its ruling and stated that it had "reinstated the homicide, felony murder and homicide murder first-degree premeditated charges." Additionally, when the case was heard in the district court on January 29, 2015 for the third preliminary exam, the district court announced that both felony murder and premeditated murder were pending before the court. Defendant was bound over on these charges. The prosecutor filed an amended information on February 4, 2015 charging Defendant with felony murder and premeditated murder. Defendant was arraigned on those charges on February 5, 2015. Defendant was properly tried for felony murder.

Defendant also asserts that there was insufficient evidence to convict him of felony murder. This does not go to the validity of Defendant's sentence, but rather goes to the validity of the conviction. The sufficiency of the evidence has been reviewed by the Court above. And this

Court has found that there was sufficient evidence that would have enabled a reasonable juror to find Defendant guilty of felony murder beyond a reasonable doubt.

## B. Double Jeopardy

Lastly, Defendant asserts that his convictions for premeditated murder and felony murder violate double jeopardy. The prosecutor's office concedes that Defendant cannot be convicted for two counts of first-degree murder for a single murder. "[C]onvicting a defendant of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim is a violation of double-jeopardy protection." *People v Orlewicz*, 293 Mich App 96, 112, 809 NW2d 194 (2011). "[T]he proper remedy when a defendant is convicted of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim is to modify the conviction to specify that it is for a single count of first-degree murder supported by two theories." *Id.* Accordingly, the Court will issue an amended Judgment of Conviction and Sentence which shall specify that Defendant is guilty of one count of first-degree murder, based on two theories.

## ORDER

For the reasons stated above, the Court hereby orders that Defendant's motion for a new trial, including his request for a *Ginther* hearing, is **DENIED**. Defendant's motion to correct an invalid sentence is **GRANTED**. An amended Judgment of Sentence is entered contemporaneously with this Opinion and Order.

Hon. Kevin J. Cox
Circuit Court Judge

13

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NOSAKHARE ONUMONU,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 329100
Wayne Circuit Court
LC No. 12-000687-01-FH

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of first-degree murder under dual theories of premeditated murder, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b). The trial court sentenced defendant to life imprisonment without parole. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant was convicted of murdering 84-year-old Helen Klocek on March 2, 1999. Klocek ate breakfast at the Three Brothers Restaurant in the "three corners" area of Canton, Plymouth, and Westland around 11:00 a.m. on March 2. After finishing her meal, she left the restaurant alone. Klocek's body was discovered after 9:00 p.m. that night, in an alley behind a church on Joy Road in Detroit. The medical examiner determined that the causes of death were strangulation and blunt force trauma to her head, neck, and chest areas, which was likely inflicted by the killer stomping on her body. Klocek's white Ford Escort was discovered in the parking lot of Arbor, Inc., two blocks away from the location where her body was found. The driver's seat had been intentionally set on fire. The police found a Kevlar glove in the back seat of the Escort.

Gwendolyn Gardner learned of Klocek's death from a television news broadcast. Gardner notified the Detroit police that she thought she saw Klocek in her vehicle with a black male on March 2, 1999, at approximately 1:30 p.m. Gardner reported seeing a small white vehicle driving very slowly on Joy Road. The driver of the vehicle was an elderly white woman. The male occupant appeared to be pointing and giving the woman directions on where to drive. The police composed a computer-generated sketch of the suspect based on Gardner's description. Before the sketch was composed, Gardner was shown a different composite sketch of a suspect in a series of purse snatchings in Plymouth. Gardner stated that the man she saw in Klocek's vehicle resembled the Plymouth sketch.

Klocek's homicide remained unsolved until 2011, when the Detroit Police received funding to investigate cold cases. The Kevlar glove was submitted for DNA analysis and comparison of the evidence to the CODIS database. Three areas of the glove's lining contained DNA that matched defendant's DNA profile. In November 2011, defendant was charged with alternative counts of first-degree premeditated murder, first-degree felony-murder, and receiving or concealing stolen property (RCSP), MCL 750.535.

At the time defendant was arrested for the Klocek homicide in 2011, he was incarcerated for a prior unrelated conviction. His anticipated parole date was in early January 2012. His parole was suspended, and he remained incarcerated throughout the pretrial proceedings and trial, which was eventually held in July 2015. The pretrial proceedings involved three preliminary examination hearings. The district court initially declined to bind defendant over for trial on murder charges, but bound him over on the charge of RCSP. The RCSP charge was later dismissed because the limitations period for that offense had expired. The circuit court remanded the case to the district court for a second preliminary examination, at which the prosecutor presented evidence of a "mug shot" photograph of defendant taken by the Dearborn Heights Police in August 1999. The purpose of this photograph was to corroborate Gardner's description of the male suspect she saw in Klocek's vehicle. The district court again declined to bind defendant over for trial on the murder charges, believing that the evidence failed to establish a sufficient nexus between defendant and Klocek's death. The prosecutor appealed the district court's decision to the circuit court, which found that reasonable inferences arising from the evidence supported a finding of probable cause that defendant was responsible for Klocek's death. Therefore, the circuit court reinstated the first-degree murder charges. Trial was delayed while defendant pursued interlocutory appeals of the circuit court's decision to this Court, which were unsuccessful.

In January 2015, defendant was granted a third preliminary examination based on his recent discovery of the Plymouth sketch. Defendant argued that Gardner's identification of him was unreliable because she had previously stated that the suspect resembled the Plymouth sketch, which allegedly did not resemble defendant. The district court found that the evidence established probable cause to believe that defendant was responsible for Klocek's death, and therefore, bound defendant over for trial on the charges of first-degree murder. In July 2015, a jury found defendant guilty of first-degree murder under the alternative theories of premeditated murder and felony murder. The trial court denied defendant's posttrial motions for a new trial or a *Ginther*[1] hearing.

## II. SPEEDY TRIAL

Defendant first argues that he was denied his constitutional right to a speedy trial. "A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted). Defendant did not assert in the trial court that the delays in proceeding to trial violated his constitutional right to a speedy trial. Although defendant argues that his pretrial habeas

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

corpus motion should be considered an assertion of his right to a speedy trial, defendant only argued in that motion that he should be paroled from the prison term he was already serving. The motion did not mention defendant's right to speedy trial. Accordingly, the speedy trial issue is unpreserved.

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law," which is reviewed de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). But because this issue is unpreserved, defendant has the burden of establishing a plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Williams*, 475 Mich at 261, citing US Const, Am VI; Const 1963, art 1, § 20; see also *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). "In determining whether a defendant has been denied the right to a speedy trial, [courts] balance the following four factors: (1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262. The period for analyzing a speedy trial claim commences at the arrest of the defendant. *Id*. at 261. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id*. at 262. "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Rivera*, 301 Mich App at 193. A defendant's failure to promptly assert his right to a speedy trial weighs against his subsequent claim that he was denied the right. *People v Rosengren*, 159 Mich App 492, 508; 407 NW2d 391 (1987). Where the defendant has incurred a violation of his or her constitutional right to a speedy trial, the charges must be dismissed with prejudice. *People v Waclawski*, 286 Mich App 634, 664-665; 780 NW2d 321 (2009).

In assessing the reasons for delays, each period of delay is examined and attributed to the prosecutor or the defendant. *People v Walker*, 276 Mich App 528, 541-542; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), and overruled in part by *People v Lown*, 488 Mich 242 (2011). Unexplained delays are attributed to the prosecutor. *Waclawski*, 286 Mich App at 666. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citation omitted). Delays sought by defense counsel, whether counsel is retained or assigned, are ordinarily attributable to the defendant. *Vermont v Brillon*, 556 US 81, 90-91; 129 S Ct 1283; 173 L Ed 2d 231 (2009). Delay caused by an interlocutory appeal is not attributable to either party. *Waclawski*, 286 Mich App at 667. The time between dismissal and reinstatement of a charge is not counted against either party. *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993).

The total period from the issuance of the arrest warrant on November 15, 2011, to the first day of trial on July 20, 2015, is 1,343 days. A period of 248 days may be attributed to

defendant's motions or requests.[2]   In addition, 518 days may be attributed to stays for interlocutory appeals, which are not attributable to either party.  See *Waclawski*, 286 Mich App at 667.  After subtracting these periods from the total delay period of 1,343 days, we are left with a net delay of 577 days.  Because the total number of days (577) exceeds 18 months, albeit by only 37 days, prejudice is presumed.  In this circumstance, the burden would normally fall on the prosecution to show that defendant was not prejudiced by the delay.  See *Williams*, 475 Mich at 262; *Rivera*, 301 Mich App at 193.  But because defendant did not preserve this issue by asserting his right to a speedy trial in the trial court, the prosecution did not have the opportunity to demonstrate that defendant was not prejudiced by the delays.  Because defendant failed to preserve the issue, he has the burden of demonstrating a plain error affecting his substantial rights.  See *Carines*, 460 Mich at 763-764.  An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

There are two types of prejudice that a defendant can experience by delays in preceding to trial, prejudice to his person because of continued incarceration, and prejudice to the defense. *Williams*, 475 Mich at 264.  Defendant contends that he was prejudiced because he was scheduled to be paroled from prison in February 2012, but he was never released from his incarceration.   Although defendant experienced personal deprivation by his continued incarceration, the prejudice prong may still weigh against a defendant who is incarcerated for even longer periods if his defense is not prejudiced by the delay.  See *id.* at 264.  Defendant asserts that his "memory of the circumstances to challenge the State's inference in this wholly circumstantial case should be considered as a factor in terms of his ability to build his defense." However, defendant does not specify how his memory was affected by the delays between his arrest and trial, as opposed to the delay of over 12 years between the offense in 1999 and his arrest in 2011.   The defense theory at trial was that defendant was misidentified as the perpetrator.  Presumably defendant means that he cannot remember his activities on March 2, 1999, to establish an alibi or recall other exculpatory circumstances.  This argument is not persuasive because defendant never asserted below—and there is no basis in the record for concluding—that defendant's memory of his whereabouts and activities on March 2, 1999 was any better when he was arrested in 2011 than when trial began in 2015.  Defendant also asserts that his incarceration throughout the pretrial period prevented him from helping any of his attorneys obtain information in support of a defense.   Again, however, defendant does not specify what evidence was lost or could not be obtained as a result of the delays between 2011 and 2015.  The fact that defendant never asserted his right to a speedy trial in the trial court weighs against his general, unspecified claims of prejudice on appeal.  Moreover, defendant actively managed his own defense to a significant degree, despite his continued incarceration

---

[2] This period includes (1) 92 days between December 2, 2013 and March 4, 2014, related to the appointment of new counsel, (2) 71 days between November 19, 2014 and January 29, 2015, after the circuit court granted defendant's motion to remand the case to the district court for a third preliminary examination, (3) five days from February 25, 2015 to March 2, 2015, due to the withdrawal of defendant's counsel, and (4) 80 days from May 1, 2015 to July 20, 2015, for an adjournment of trial to enable new counsel to prepare for trial.

from his previous conviction. Under the circumstances, defendant has not established that it is clear or obvious that he was prejudiced by the delay between his arrest and trial. Therefore, defendant has not shown that he was denied his right to a speedy trial.

## III. CIRCUIT COURT'S REINSTATEMENT OF THE MURDER CHARGES

Defendant next argues that the circuit court erred and improperly substituted its judgment for that of the district court when it reinstated the first-degree murder charges. A district court's ruling that alleged conduct falls within the scope of a criminal law is a question of law that is reviewed de novo for error, but a decision to bind over a defendant based on the factual sufficiency of the evidence is reviewed for an abuse of discretion. *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003); *People v Hotrum*, 244 Mich App 189, 191; 624 NW2d 469 (2000). In reviewing a bindover decision, a circuit court must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court. *People v McKinley*, 255 Mich App 20, 25; 661 NW2d 599 (2003). The decision to bind over a defendant may only be reversed if it appears from the record that the district court abused its discretion. *Id.* This Court also reviews the district court's bindover decision de novo to determine if the district court abused its discretion. *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). Thus, this Court gives no deference to the circuit court's decision. *People v Harlan*, 258 Mich App 137, 145; 669 NW2d 872 (2003). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citation omitted). In *People v Feeley*, 499 Mich 429, 434; 885 NW2d 223 (2016), our Supreme Court reiterated that "[a] district court's decision regarding a bindover is reviewed for an abuse of discretion," while noting that a district court would necessarily abuse its discretion if it made an error of law.

Defendant challenges reinstatement of the first-degree murder charges on both procedural and substantive grounds. He asserts three procedural irregularities: (1) the prosecutor's failure to timely appeal the district court's order of dismissal; (2) the prosecutor's attempt to circumvent the 21-day appeal period by filing a Renewed Motion to Amend Information in lieu of an appeal of the district court's decision; and (3) the prosecutor's failure to properly serve him with the Renewed Motion to Amend. We reject each of these procedural challenges.

The circuit court properly determined that the prosecutor's appeal was timely filed. It is well settled that "[a] court speaks through written judgments and orders rather than oral statements or written opinions." *People v Jones*, 203 Mich App 74, 82; 512 NW2d 26 (1993). Although the appeal was filed more than 21 days after the district court's oral ruling, it was filed on December 7, 2012, within the 21-day period after entry of the district court's order on November 16, 2012. See MCR 1.108(1). Thus, the appeal was timely filed.

Defendant complains that the prosecutor failed to "obtain" a written order from the district court. However, defendant, as a party to the action, also could have obtained a written order from the court in accordance with the procedures set forth in MCR 2.602. See MCR 6.101(D) (the rules of civil procedure apply to criminal cases unless otherwise provided or a rule clearly applies to civil actions only). Moreover, the prosecutor did try to expedite the stalled proceedings by moving to amend the information one month after the district court's oral decision on June 15, 2012 dismissing the murder charges. That motion was not improper

because a prosecutor is permitted to seek review of the district court's decision by filing a motion to amend the information. See *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998).

Defendant does not explain why the prosecutor's renewed motion to amend the information violated his rights, aside from stating that the prosecutor improperly served this motion on his former attorney instead of serving him personally. However, any error in service of this pleading was harmless because the circuit court never formally addressed the prosecutor's motion to amend. The circuit court indicated that it did not resolve this motion because it had previously remanded the case and "the appropriate resolution was to go get additional evidence" for the second preliminary examination, i.e., review the district court's decision after the second preliminary examination. The prosecutor properly filed a claim of appeal after the district court entered its order on remand. Defendant also implies that he was not served with the claim of appeal, but the trial court adjourned the appeal hearing on January 3, 2013, after defendant requested counsel, and defendant filed a brief before the hearing was continued on March 22, 2013, at which his new counsel appeared and argued in opposition to the appeal. Thus, any initial defect in service was cured and defendant was afforded his right to due process.

Defendant also argues that the circuit court improperly substituted its own judgment for that of the district court when it reversed the district court's ruling that the evidence at the preliminary examination failed to establish probable cause to believe that defendant committed the charged offense. "If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004), citing *People v Yost*, 468 Mich 122, 124 n 2; 659 NW2d 604 (2003). Accordingly, if sufficient evidence to support defendant's conviction was presented at trial and there are no other grounds for reversing his conviction, any error with respect to reinstating the murder charges is harmless. In any event, the circuit court's decision was not erroneous.

Defendant contends that the district court found that there was no probable cause linking him to Klocek's murder because any connection between him and Klocek's death depended on unreasonable inferences. However, the district court found that probable cause depended upon building an inference upon an inference, i.e., inferring that defendant was in the car with Klocek, and then inferring from that that defendant was responsible for Klocek's death. The district court did not indicate that either inference was unreasonable, but only concluded that the stacking of inferences was legally impermissible to establish probable cause. The distinction is significant because under the applicable standard of review, the circuit court reviews questions of law de novo. The question whether an inference may be based on another inference to establish probable cause is a question of law. In *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), our Supreme Court rejected the principle "that an inference can not [sic] be built upon an inference to establish an element of the offense." The Court noted that although this principle had been articulated in *People v Atley*, 392 Mich 298; 220 NW2d 465 (1974), "virtually from the time of its publication, *Atley* was apparently felt to be unworkable and has been the subject of judicial redefinition by a series of decisions." *Hardiman*, 466 Mich at 424. The Court stated:

> Accordingly, when reviewing sufficiency of the evidence claims, courts should view all the evidence—whether direct or circumstantial—in a light most favorable to the prosecution to determine whether the prosecution sustained its burden. It is

for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. In compliance with MRE 401, we overrule "the inference upon an inference" rule of *Atley* and its progeny. [*Id.* at 428.]

*Hardiman* involved a challenge to the sufficiency of the evidence to support the defendant's conviction. *Id.* at 419. A conviction must be supported by sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. *Id.* at 421-422. The standard for establishing probable cause is lower than the reasonable doubt standard. "The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). "To establish that a crime has been committed, a prosecutor need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *Id.* Accordingly, if an inference-upon-an-inference is permissible for establishing a defendant's guilt, it is also permissible for establishing probable cause. The circuit court properly ruled that the district court's decision was based on its erroneous belief that an inference could not be based on another inference. The circuit court also properly ruled that the inferences arising from the evidence in this case were sufficient to establish probable cause to believe that defendant was responsible for Klocek's death. It was the function of the trier of fact to determine if the asserted inferences were reasonable and to determine the weight to be accorded those inferences. Therefore, the circuit court did not err in reinstating the first-degree murder charges.

## IV. CIRCUIT COURT'S JURISDICTION OVER FELONY-MURDER CHARGE

Defendant next argues that the circuit court never properly obtained jurisdiction over the felony-murder charge. He contends that the circuit court's reinstatement of the murder charge pertained only to premeditated murder, not felony murder. Whether a court has jurisdiction over a matter is a question of law that is reviewed de novo. *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996).

Our Supreme Court "has consistently held that the circuit court acquires jurisdiction of the case upon the making of a proper return from the magistrate before whom the defendant had been examined or waived examination." *People v Curtis*, 389 Mich 698, 707; 209 NW2d 243 (1973). The record does not support defendant's contention that the circuit court reinstated only the first-degree premeditated murder charge, and not the felony-murder charge. Moreover, premeditated murder and felony murder are merely different forms of the same offense, first-degree murder, MCL 750.316(1)(a) and (b). This is reflected in the principle that convictions of both first-degree premeditated murder and first-degree felony murder arising from the death of a single victim violate the constitutional double jeopardy protection against multiple punishments for the same offense. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Thus, when a defendant is convicted of both first-degree premeditated murder and first-degree felony-murder, the judgment of sentence must specify a single conviction of first-degree murder supported by two theories: premeditated murder and felony murder. *Id.* Accordingly, defendant's argument that the circuit court had jurisdiction over only the premeditated murder charge, and not the felony-murder charge, is without merit.

## V. SUPPRESSION OF EVIDENCE

Among the statement of questions presented in defendant's brief is an issue challenging the trial court's pretrial decision denying defendant's motion to suppress the Kevlar glove. However, defendant fails to address this issue in the body of his brief. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Because defendant does not address this issue in his brief, it has been abandoned. But, as the trial court observed, defendant's arguments regarding alleged irregularities in the chain of custody for the glove, as well as alleged inaccuracies in labeling the glove as left-handed and a discrepancy in the listed date the glove was received by an evidence technician were matters affecting only the weight of the evidence, not its admissibility. See *People v White*, 208 Mich App 126, 129-131; 527 NW2d 34 (1994).

## VI. SUFFICIENCY OF EVIDENCE

Defendant argues that the evidence was insufficient to support his conviction of first-degree murder, under either a theory of premeditated murder or felony murder. "Appeals regarding the sufficiency of the evidence are reviewed de novo." *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). "In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *Id.* at 9. This Court "must not interfere with the jury's role" in deciding the weight of evidence and the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748, amended 441 Mich 1201 (1992). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. "[I]f evidence is relevant and admissible, it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *Id.*

The elements of first-degree premeditated murder, MCL 750.316(1)(a), are: "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Because of the difficulty of proving an actor's state of mind, "minimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *Henderson*, 306 Mich App at 11. Premeditation and deliberation require sufficient time to allow the defendant to reconsider his actions, or in other words, sufficient time to "take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999) (quotation marks and citation omitted). Factors relevant to the establishment of premeditation and deliberation include: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id.* (quotation marks and citation omitted).

The circumstances surrounding Klocek's death support an inference that she was killed with premeditation and deliberation. The medical examiner identified multiple injuries contributing to her death. The perpetrator strangled her and delivered traumatic blows to her

head, neck, and chest, consistent with a stomping motion. The evidence of the multiple blunt force injuries in addition to strangulation supports an inference that the killer had the opportunity to premeditate and deliberate his actions, and was determined to continue his attack until Klocek was killed. The evidence that Klocek was taken to an isolated area further supports that the killer acted in accordance with a premeditated plan to kill her.

The evidence was also sufficient to support the elements of felony murder, MCL 750.316(1)(b). The elements of felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)]." *Carines*, 460 Mich at 759 (quotation marks and citation omitted). "[L]arceny of any kind" is a predicate offense enumerated in MCL 750.316(1)(b). The elements of larceny are: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). Witnesses testified that Klocek was protective of her purse, which she had with her when she left the Three Brothers Restaurant, but her purse was not found at the scene of the homicide or in her abandoned car. The jury could reasonably infer that the person who killed Klocek took her purse. The fact that the purse was never found does not negate this inference. The evidence showed that the driver's seat of Klocek's car was set on fire. This evidence supports an inference that the fire was started in an effort to conceal evidence of the perpetrator's guilt. It is reasonable to infer that the person who took the purse also would have discarded it to prevent its discovery. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that Klocek was killed during the commission of a larceny.

Defendant primarily argues that the evidence was insufficient to prove his identity as the killer. Identity is an essential element of every crime. *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008). Defendant concedes that Gardner's testimony and the DNA analysis of the Kevlar glove support an inference that he was in Klocek's vehicle. He argues, however, that there was no evidence connecting him to the location of the homicide or the missing purse. He asserts that his alleged presence in Klocek's vehicle is insufficient to connect him to the location of the murder and the discovery of Klocek's body. We disagree.

Although the prosecutor could not account for the approximate eight-hour gap between Gardner's sighting of defendant with Klocek in her car and the discovery of Klocek's body, a reasonable trier of fact could have found that the circumstantial evidence established defendant's identity as the killer. The prosecutor introduced testimony that Klocek was protective of her purse and kept it close to her, yet it was not with her when her body was discovered, nor was it inside her vehicle. The evidence indicated that defendant was the last person known to have contact with Klocek. Defendant was a stranger to Klocek, but Gardner's testimony placed him inside Klocek's vehicle shortly after she left the Three Brothers Restaurant. Gardner's testimony that Klocek was driving slowly and that defendant appeared to be directing her where to drive supported an inference that Klocek was not acting of her own volition when she was with defendant, and that defendant's presence in her vehicle was not consensual. Klocek's vehicle was discovered in a commercial parking lot, but there was no evidence that anyone saw Klocek alive after she was observed with defendant, or evidence that she attempted to contact the police or a family member between the time she was seen with defendant in the afternoon on the day of

her death and the discovery of her body later that night. Therefore, the jury could reasonably reject any suggestion that Klocek parted from defendant in safety, only to have the additional misfortune of falling victim to another person unconnected to defendant. Viewed in a light most favorable to the prosecution, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant was the person responsible for Klocek's death.

## VII. IDENTIFICATION TESTIMONY

Defendant next argues that the admission of Gardner's identification testimony violated his due process rights. Because defendant did not move to exclude Gardner's identification testimony before trial, or object to its admission at trial, this issue is unpreserved. Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

To sustain a due process challenge based on an improper pretrial identification procedure, the defendant must demonstrate that the "identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). If a pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial, unless an independent basis for the in-court identification can be established that is untainted by the suggestive pretrial procedure. *Id.* at 303.

Defendant does not expressly argue that Gardner was exposed to an unfairly suggestive pretrial identification procedure that unduly influenced her identification testimony. Rather, defendant advances various reasons for why he believes Gardner's identification testimony was not credible, and thus insufficient to establish his identity as the perpetrator. Defendant emphasizes that when Gardner was interviewed by the police in March 1999, she was shown a composite sketch of a suspect in a series of purse-snatchings in Plymouth. Gardner stated that the man she saw in Klocek's vehicle resembled the Plymouth sketch. Defendant maintains that the two sketches are not similar, and that Gardner's statement regarding the similarity of the Plymouth sketch should therefore be construed to mean that she could not have seen him in Klocek's car. Defendant emphasizes that Gardner failed to identify him at the 2012 preliminary examination, but three years later made a positive identification. He contends that the positive identification cannot be attributable to her memory, but instead must have come from seeing him at prior hearings. He also contends that her description does not match his actual appearance, specifically in regard to his complexion and eye color. Defendant further argues that the most reliable procedure for testing Gardner's identification would have been to compose a photographic lineup using his 1999 Dearborn Heights mug shot, and that the failure to use this procedure should have precluded Gardner's identification testimony at trial.

Defendant's arguments relate to the credibility and reliability of Gardner's identification testimony, which were matters for the jury to decide. See *Wolfe*, 440 Mich at 514-515. Defendant exercised the opportunity to thoroughly cross-examine Gardner on all aspects of her identification. Defendant questioned Gardner about the length of time she drove in proximity to Klocek's car and the relative positions of her van and Klocek's vehicle. He elicited Gardner's admission that she "glanced" downward into Klocek's car as she passed it on the left in her full-size van. Defendant also questioned Gardner about her description of the man as having a light complexion and light-colored eyes, and called the jury's attention to defendant's appearance.

The jury viewed the Plymouth sketch and the sketch that was composed from Gardner's description, and had the opportunity to consider whether their similarities or dissimilarities corroborated or undermined Gardner's identification. It was up to the jury to assess the accuracy of Gardner's identification, and to determine whether Gardner's testimony, in conjunction with the evidence of the glove, defendant's work and home locations, and the other evidence in the case were sufficient to establish defendant's identity as the perpetrator.

Defendant argues that, by the time of trial, Gardner was able to identify him only because she had seen him at the previous preliminary examinations. Defendant maintains that Gardner's inability to identify him at the first preliminary examination established that her identification of him at the third preliminary examination and at trial could only have been based on her observation of defendant at the first preliminary examination. Contrary to what defendant asserts, however, Gardner did not express an inability to identify him at the first preliminary examination. Rather, she was never asked to identify him at that preliminary examination.

Although the photographic lineup procedure suggested by defendant may have been an appropriate means of testing Gardner's identification, the omission of this procedure does not constitute a due process violation. The pertinent inquiry is whether, "in the light of the totality of the circumstances," the pretrial identification procedures "led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302. Defendant fails to satisfy this threshold. The failure to conduct a photographic lineup does not constitute a plain error affecting defendant's substantial rights.

## VIII.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that a new trial is necessary because he was denied the effective assistance of counsel. Although defendant moved in the trial court for a *Ginther* hearing, the trial court denied the motion, concluding that an evidentiary hearing was not necessary. Accordingly, our review of this issue "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Defendant has the burden of establishing the factual predicate of his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant argues that defense counsel was ineffective for failing to adequately cross-examine witnesses, and failing to present or elicit exculpatory evidence. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. "[F]ailure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id.* (quotation marks and citation omitted).

Defendant argues that defense counsel was ineffective for failing to cross-examine witnesses regarding irregularities in the documentation for the Kevlar glove obtained from Klocek's vehicle. Defendant contends that "there was actually no glove discovered with Ms. Klocek's vehicle in March of 1999," but trial counsel failed to pursue this exculpatory theory to defendant's advantage. The glove was listed and described in Officer Babcock's report, dated March 8, 1999. According to defendant, irregularities in the glove's paper trail diminished the glove's evidentiary value, but trial counsel failed to adequately pursue this theory. Although defendant correctly notes that the glove was the only item of evidence that objectively associated him with the victim's vehicle, he overestimates the potential to diminish the glove's evidentiary value. Trial counsel did, in fact, attempt to cast doubt on the glove's provenance, and defendant has not demonstrated that counsel's attack on this evidence was prejudicially deficient.

Officer Babcock testified on direct examination that his entry of the "3-8-10" date in his report was a typographical error. He also stated that he was uncertain which side of the glove was the palm side, which explained his mistake in describing the glove as left-handed. The prosecutor evidently anticipated that Babcock's errors potentially detracted from the persuasive value of this evidence, and thus elicited Babcock's explanations on direct examination. Defendant contends that defense counsel failed to pursue "any alternate theory" regarding the glove, but he fails to offer a specific and plausible alternate theory. Defendant also criticizes counsel for failing to cross-examine Babcock regarding his "carelessness" with evidence and "the potential for tampering" the report. But the prosecutor had already elicited testimony regarding his errors on direct examination; thus, defendant has not overcome the presumption that defense counsel's failure to further pursue the matters on cross-examination was objectively reasonable, or shown that he was deprived of a substantial defense.

Officer Ellis explained on direct examination that he did not submit the glove for DNA analysis in 1999 because at that time the crime lab would not conduct DNA analysis of evidence without a suspect. On cross-examination, defense counsel elicited Ellis's admission that he submitted fingernail clippings and rape kit evidence for DNA analysis, despite not having a suspect. Defense counsel thus elicited testimony to support an inference that Ellis did not have a legitimate reason for not requesting DNA analysis of the glove. There is no basis for inferring that defense counsel overlooked opportunities to cross-examine Ellis in support of the defense theory.

Defendant also argues that defense counsel was ineffective for failing to cross-examine prosecution witnesses or introduce evidence that the police had investigated other suspects in relation to Klocek's murder. There is no basis for inferring that any of the witnesses could have provided a substantial defense. Defendant relies on information from police documents prepared in 1999. There is no evidence regarding these persons' availability to testify at trial, or indicating what information they could have given at the time of defendant's trial. Accordingly, the record does not support a finding that defense counsel's failure to call these witnesses was objectively unreasonable, or that calling the witnesses would have led to a more favorable outcome for defendant.

Defendant asserts that defense counsel failed to cross-examine witnesses to rebut evidence that he worked and resided near the Three Brothers Restaurant. However, defendant has not made an offer of proof disputing the prosecutor's evidence regarding the location of his

home and workplace on March 2, 1999. Defendant's failure to establish the factual predicate for this claim precludes relief. See *Hoag*, 460 Mich at 6.

Further, defendant has failed to demonstrate that remand for a *Ginther* hearing is necessary to develop an evidentiary record to support his claims of ineffective assistance of counsel. Defendant does not identify any relevant evidence that could be developed at an evidentiary hearing and has not submitted any affidavits or other evidence to demonstrate that additional witnesses could provide relevant evidence in support of his claim of ineffective assistance of counsel. Accordingly, we deny defendant's request to remand this case for a *Ginther* hearing.

## IX. MOTION FOR NEW TRIAL

Defendant lastly argues that the trial court erred in denying his motion for a new trial. We review a trial court's decision denying a motion for a new trial for an abuse of discretion. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001).

Defendant argues that he should be granted a new trial because "for all the foregoing reasons," his conviction resulted in a miscarriage of justice. This argument seeks relief under a cumulative error theory. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "This Court reviews a cumulative-error argument to determine if the combination of alleged errors denied the defendant a fair trial." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). Defendant has failed to establish any of his individual claims of error. Moreover, the only matters asserted by defendant that could reasonably have a cumulative prejudicial effect are Gardner's identification testimony and the Kevlar glove. These evidentiary items jointly established defendant's identity as the perpetrator. However, defendant has not established that either item was erroneously admitted.

Defendant also complains that he was convicted on the basis of circumstantial evidence, and inferences that he contends are not reasonable. This argument attacks the weight of the evidence. A new trial may be granted if a jury's verdict is against the great weight of the evidence. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds in *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). The test for whether a verdict was contrary to the great weight of the evidence is "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *McCray*, 245 Mich App at 637.

Generally, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), quoting *Lemmon*, 456 Mich at 643. Exceptional circumstances are required for a new trial to be granted based on witness credibility. Exceptional circumstances include testimony that contradicts "indisputable physical facts or laws," or that is "so inherently implausible that it could not be believed by a reasonable juror," or that was "seriously impeached in a case that marked by uncertainties and discrepancies." *Bosca*, 310 Mich App at 13, quoting *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014) (quotation marks omitted),

rev'd in part on other grounds 498 Mich 902 (2015). Defendant questions the credibility of Gardner's identification testimony, but does not identify any exceptional circumstances that would allow a court to substitute its view of her credibility for that of the jury. Moreover, Gardner's identification testimony was corroborated by the DNA evidence in the Kevlar glove. Accordingly, the jury's verdict is not against the great weight of the evidence. Thus, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

-14-

Robert Lewis
50-5191
Parnall Correctional Facility
1780 to Blue Water Hwy
Jackson, MI 48876

4-24-19

(A)

RECEIVED
APR 30 2019
CLERK'S OFFICE
U.S. DISTRICT COURT

Office of the Clerk
United States District Court
231 W. Lafayette Boulevard, 5th floor
Detroit, Michigan 48226

61

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| **Case No.** 19-11272 | **Judge:** Gershwin A. Drain | **Magistrate Judge:** Elizabeth A. Stafford |

| | |
|---|---|
| **Name of 1st Listed Plaintiff/Petitioner:**<br><br>NOSAKHARE ONUMONU | **Name of 1st Listed Defendant/Respondent:**<br><br>JOHN DAVIDS |
| **Inmate Number:** 303121 | **Additional Information:** |
| **Plaintiff/Petitioner's Attorney and Address Information:** | |
| **Correctional Facility:**<br>Ionia Maximum Correctional Facility<br>1576 W. Bluewater Highway<br>Ionia, MI 48846<br>IONIA COUNTY | |

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☒ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☐ IFP *In Forma Pauperis*
- ☒ PD Paid

---

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ Yes   ☒ No
   ➤ If yes, give the following information:
   Court: _____
   Case No: _____
   Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☒ Yes   ☐ No
   ➤ If yes, give the following information:
   Court: USDC - EASTERN DISTRICT OF MICHIGAN
   Case No: 19-10438
   Judge: BERNARD A. FRIEDMAN